UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - -  :

ZURICH AMERICAN INSURANCE            :
COMPANY,                                             :    15cv3270
                                                              :
        Plaintiff,                             :    OPINION & ORDER
                                                              :
    -against-                                      :
                                                              :
HARLEYSVILLE INSURANCE CO., et        :
al.,                                                           :
                                                              :
        Defendants,                         :
                                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - -  :

WILLIAM H. PAULEY III, District Judge:

        This insurance dispute arises from a personal injury lawsuit in New York State Supreme Court captioned <u>Greef v. Redeeemer Presbyterian Church</u>, Case No. 2011/113132 (the "Underlying Action"). Plaintiff Zurich American Insurance Co. ("Zurich") issued a general liability policy to general contractor FJ Sciame ("Sciame") and is defending Sciame in the Underlying Action. Defendant Harleysville Insurance Company ("Harleysville") has denied coverage to Sciame under a general liability policy issued to subcontractor Peepels Mechanical Corp. ("Peepels"). Defendant Scottsdale Insurance Company ("Scottsdale") has denied coverage to Sciame under a general liability policy issued to subcontractor American Spray-On Corp. ("Spray-On"). Zurich alleges that Harleysville and Scottsdale are obligated to defend and indemnify Sciame.

        Zurich seeks a declaratory judgment that: (1) Harleysville and Scottsdale have a co-primary duty to defend and indemnify Sciame in the Underlying Action; (2) Harleysville and Scottsdale are obligated to share in the payment of past and future defense costs of Sciame on a co-primary basis; and (3) Harleysville and Scottsdale have a duty to indemnify Sciame on a co-

primary basis for any settlement or judgment in the Underlying Action. Harleysville counters with a summary judgment motion of its own, seeking a ruling that Scottsdale has the primary duty to defend Sciame. Zurich's motion for summary judgment is granted in part, and Harleysville's motion for summary judgment is granted.

## BACKGROUND

Sciame was hired as the manager and general contractor for a construction project in Manhattan in 2009. Sciame then subcontracted work to Peepels and Spray-On. Section 13.4 of those subcontracts required Peepels and Spray-On to procure insurance policies which "name [Sciame] . . . as [an] Additional Insured[]for claims arising out of Subcontractor's Work or caused in whole or in part by the Subcontractor's acts or omissions during the Subcontractor's operations." Such insurance was required to be "on a primary and non-contributory basis." (DeMarco Decl., Ex. E, ECF No. 17–11 (Peepels Subcontract)); Kaye Decl. Ex. F, ECF No. 25–8 (Spray-On Subcontract).)

Zurich issued a commercial general liability policy to Sciame covering a period of June 1, 2011 to June 1, 2012 (the "Zurich Policy"). (DeMarco Decl. Ex. A, ECF No. 21–1) Harleysville issued a commercial general liability policy to Peepels covering December 17, 2010 to December 17, 2011 with a $1 million liability limit per incident (the "Harleysville Policy"). (DeMarco Decl. Ex. B). Scottsdale issued a commercial general liability policy to Spray-On covering December 31, 2010 to December 31, 2011 with a $1 million liability limit per incident (the "Scottsdale Policy"). (DeMarco Decl. Ex C.)

In October 2011, a Peepels employee was injured on the job when he slipped from a ramp covered with Spray-On's fireproofing. (DeMarco Decl. Ex. R, S.) That Peepels employee filed the Underlying Action, naming Sciame as a defendant. (DeMarco Decl. Ex. D.).

In November 2011, Zurich tendered the Underlying Action to Harleysville, seeking defense and indemnity under the Harleysville Policy. (DeMarco Decl. Ex. F.) Harleysville disclaimed defense and indemnity coverage to Sciame, arguing that the injury did not arise out of Peepels' work on the project. (DeMarco Decl. Ex. G.) However, Harleysville admitted in July 2015 that Sciame qualified as an additional insured under the Harleysville Policy, but asserted that the Scottsdale Policy is primary to the Harleysville Policy with respect to Sciame. (DeMarco Decl. Ex. P.) In February 2012, Zurich tendered the Underlying Action to Scottsdale. (DeMarco Decl. Ex. J.) In April 2015, Scottsdale agreed to defend Sciame as an additional insured under the Scottsdale Policy, subject a reservation of rights. (DeMarco Decl. Ex. N.) However, Scottsdale's answer in this action denies its obligation to defend and indemnify Sciame as an additional insured. (ECF No. 9.)

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The burden of demonstrating the absence of any genuine dispute as to a material fact rests with the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). In determining whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." Liberty Lobby, 477 U.S. at 255. When the dispute hinges on contract interpretation, "summary judgment may be granted when [the contract's] words convey a definite and precise meaning absent any ambiguity." Seiden Assocs., Inc. v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir. 1992).

3

DISCUSSION

I. The Duty to Indemnify

As explained by the New York Court of Appeals, "an insurer's duty to defend is broader than its duty to indemnify. . . . [A]n insurer may be contractually bound to defend even though it may not ultimately be bound to pay, either because its insured is not factually or legally liable or because the occurrence is later proven to be outside the policy's coverage. While the duty to defend is measured against the possibility of a recovery, the duty to pay is determined by the actual basis for the insured's liability to a third person." Frontier Insulation Contractors, Inc. v. Merchants Mut. Ins. Co., 91 N.Y. 2d 169, 178 (1997). Zurich argues that Defendants must defend and indemnify Sciame as an "additional insured" under their respective policies. Both Harleysville and Scottsdale acknowledge that Sciame qualifies as an "additional insured" under their policies, but assert that any ruling regarding their duty to indemnify would be premature until liability has been determined in the Underlying Action.

A. Harleysville's Duty to Indemnify

The Harleysville Policy states, in relevant part:

A. SECTION II - WHO IS AN INSURED is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage", or "personal and advertising injury" caused, in whole or in part, by:

1. Your acts or omissions; or

2. The acts or omission of those acting on your behalf;

4

> in the performance of your ongoing operations for the additional insured. A person's or organization's status as an additional insured under this endorsement ends when your operations for that additional insured are completed.

(DeMarco Decl. Ex. B at 22.) The Harleysville Policy thus sets forth two requirements for coverage: (1) a "written contract" requirement in which Peepels agrees to add Sciame as an additional insured, and (2) a "caused by" requirement, which limits coverage to injury "caused, in whole or in part, by [Peepels'] acts or omissions" or "those acting on [Peepels'] behalf" while "in the performance of [Peepels'] ongoing operations for [Sciame]."

Harleysville does not dispute that the "written contract" requirement is satisfied here because Peepels and Sciame entered into a contract requiring Peepels to procure "additional insured" coverage for Sciame. (DeMarco Decl. Ex. E.) Harleysville argues, however, that any ruling on its duty to indemnify would be premature because a material factual dispute exists as to whether the "bodily injury" at issue in the Underlying Action was "caused, in whole or in part, by Peepels."

New York law establishes that the "caused by" requirement is satisfied by the mere fact that the injured plaintiff in the Underlying Action worked for Peepels at the time when the accident occurred. The First Department's recent decision in <u>Kel-Mar Designs, Inc. v. Harleysville Ins. Co. of New York</u> is instructive:

> The insurance policy that defendant provided to [the S]ubcontractor . . . provides additional insured coverage to plaintiff general contractor only for "liability caused, in whole or in part, by the acts or omissions of [Subcontractor] . . . in the performance of [Subcontractor's] ongoing operations for the additional insured." The loss at issue in the underlying action—a personal injury suffered by a[ Subcontractor] employee when he lost his footing on a stairway while working on a construction project—resulted, at least in part, from "the acts or omissions" of the [Subcontractor] employee while performing his work (i.e., his loss of footing while on the stairway), regardless of whether the [Subcontractor's] employee was negligent or otherwise at fault for his mishap. Accordingly, defendant is obligated both to defend and indemnify plaintiff as an additional insured under the [Subcontractor] policy.

5

127 A.D.3d 662, 663, 8 N.Y.S.3d 304, 305 (N.Y. App. Div. 1st Dep't 2015); see also Burlington Ins. Co. v. NYC Transit Auth., 14 N.Y.S.3d 377, 383 (N.Y. App. Div. 1st Dep't 2015) ("[W]here a policy endorsement (like the ones here at issue) extends coverage to additional insureds for losses 'caused by' the named insured's 'acts or omissions' or 'operations,' the existence of coverage does not depend upon a showing that the named insured's causal conduct was negligent or otherwise at fault."). In other words, if a subcontractor's employee injures himself on the job, that injury "arises from" that employee's "acts," regardless of fault. This broad reading of the "caused by" requirement has been adopted by courts in this District. See, e.g., Liberty Mut. Ins. Co. v. Zurich Am. Ins. Co., No. 11-cv-9357 (ALC), 2014 WL 1303595, at *5 (S.D.N.Y. Mar. 28, 2014) ("It is not necessary to determine that [the named insured/subcontractor] was somehow negligent as any act or omission by [the named insured/subcontractor] or someone acting on its behalf will suffice if it was in the performance of [the named insured's/subcontractor's] ongoing operations for the additional insured.")

Here, the record unambiguously establishes that plaintiff in the Underlying Action was working for Peepels. (See, e.g., DeMarco Decl. Ex. R (incident report).) Based on the First Department's broad reading of nearly identical contractual language, there is no issue of material fact as to whether the "bodily injury" was "caused" at least "in part" by "the acts or omissions" of the Peepels employee as defined by the Harleysville Policy. Accordingly, Harleysville has a duty to defend and indemnify Sciame.

B. Scottsdale's Duty to Indemnify

Like Harleysville, Scottsdale argues that any ruling on its duty to indemnify would be premature before a determination of fault is made in the Underlying Action.

6

The Scottsdale Policy's Additional Insured clause covers Sciame for "liability arising out of [Spray-On's] ongoing operations performed for [Sciame]." (DeMarco Decl. Ex. C.) In the context of Additional Insured policies, New York law treats "caused by" and "arising out of" identically. See Liberty Mut. Ins. Co., 2014 WL 1303595, at *5 ("Courts in the First Department have repeatedly concluded . . . that the phrase 'caused by' does not materially differ from the phrase 'arising out of.'") (quotations and citations omitted). As such, the "arising out of" language featured in the Scottsdale Policy is interpreted broadly. See, e.g., Admiral Ins. Co. v. Am. Empire Surplus Lines Ins. Co., 96 A.D.3d 585, 587 (N.Y. App. Div. 1st Dep't 2012) ("We have interpreted the phrase 'arising out of' in an additional insured clause to mean 'originating from, incident to, or having connection with.' It requires only that there be some causal relationship between the injury and the risk for which coverage is provided.").

The First Department's addressed analogous circumstances in Burlington. There, a New York City Transit Authority ("NYCTA") employee was injured during a subway construction project due to an explosion caused by an excavation machine coming in contact with an electrical cable. Burlington, 14 N.Y.S.3d at 379. Although the excavation company was not faulted for the explosion, the First Department nevertheless held that the excavation company's insurance policy was required to indemnify the NYCTA:

> While the loss in the present case does not involve an injury to an employee of the named insured [excavator], given that [the excavator's] employee operated the machine that set off the explosion, here . . . the loss resulted, at least in part, from 'the acts or omissions' of [the excavator] . . . , regardless of whether [the excavator] was negligent or otherwise at fault for the mishap.

Burlington, 14 N.Y.S.3d at 384 (internal quotations omitted).

Similarly, in this action, the record establishes that the underlying incident arose out of Spray-On's ongoing operations performed for Sciame. For example, the incident report

7

filed by the plaintiff in the Underlying Action twice references Spray-On's fireproofing as a reason for his injury. (DeMarco Decl. Ex. R). His deposition testimony reaffirms that assertion. (DeMarco Decl. Ex. S.) Scottsdale does not contest these facts, but argues instead that it would not have a duty to indemnify Sciame if Sciame is found liable for negligence in the Underlying Action. This argument disregards the weight of recent authority under New York law, including Burlington. Accordingly, Scottsdale has a duty to defend and indemnify Sciame.

II. Primary Coverage and the "Other Insurance" Clauses

Each party takes a different view regarding the priority of coverage their respective policies provide for Sciame. Zurich argues that Harleysville and Scottsdale are required to provide co-primary coverage to Sciame, and that the Zurich Policy is excess to those policies. Harleysville argues that the Scottsdale Policy alone provides primary coverage to Sciame, with the Harleysville and Zurich Policies providing the second and third layers of defense, if necessary. Scottsdale argues that all three policies provide co-primary coverage to Sciame.

Determination of this issue turns on interpretation of the insurance policies' "other insurance" clauses:

> Where the same risk is covered by two or more policies, each of which was sold to provide the same level of coverage (as is the case here), priority of coverage (or, alternatively, allocation of coverage) among the policies is determined by comparison of their respective "other insurance" clauses. An "other insurance" clause limits an insurer's liability where other insurance may cover the same loss. This may be accomplished by providing that the insurance provided by the policy is excess to the insurance provided by other policies, in which case the "other insurance" clause is known as an excess clause. Alternatively, an "other insurance" clause may limit the insurer's liability by providing that, if other insurance is available, all insurers will be responsible for a stated portion of the loss; an "other insurance" clause of this kind is known as a pro rata clause.

8

Sport Rock Int'l, Inc. v. Am. Cas. Co. of Reading, PA, 65 A.D.3d 12, 18 (N.Y. App. Div. 1st Dep't 2009) (quotations and citations omitted).

Surveying key cases addressing excess "other insurance" clauses under New York law, the Second Circuit explained the general rules of interpretation as follows:

> The general rule under New York law is that there is a well-settled equitable right to contribution, where there is concurrent insurance even in the absence of a policy provision for apportionment, and that where each of the policies covering the risk generally purports to be excess to the other, the excess coverage clauses are held to cancel out each other and each insurer contributes in proportion to its limit amount of insurance. Thus, though it is possible for an insurer to provide that it would, in effect, supply only the final tier of coverage, if other policies similarly purported to provide final-tier coverage, all such insurers would be required to contribute ratably toward any settlement. The general rule of ratable contribution is inapplicable, however, if it would effectively deny and clearly distort the plain meaning of the terms of the policies.

U.S. Fire Ins. Co. v. Fed. Ins. Co., 858 F.2d 882, 885 (2d Cir. 1988) (internal quotations and citations omitted).

The relevant portions of the policies are set forth below:

### The Zurich Policy

4. Other Insurance:
If other valid and collectible insurance is available to the insured for a loss we cover . . . our obligations are limited as follows:

> a. <u>Primary Insurance</u>
> This insurance is primary except when Paragraph b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in paragraph c. below.
>
> b. <u>Excess Insurance</u>
> (1) This insurance is excess over
> (b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

9

    c. Method of Sharing
If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

(Kaye Decl. Ex. B.)

### The Harleysville Policy

Any coverage provided . . . shall be excess over any other valid and collectible insurance available to the additional insured whether primary, excess, contingent, or on any other basis unless a written contract specifically requires that this insurance be primary and that the additional insured's primary coverage be non-contributory. Even if the requirements of the above paragraph are met, this coverage shall share with other insurance available to the additional insured which is conferred onto said persons or organization by a separate additional insured endorsement.

(DeMarco Decl. Ex. B.)

### The Scottsdale Policy

Condition 4. Other Insurance of SECTION IV-COMMERCIAL GENERAL LIABILITY CONDITION is deleted in its entirety and is replaced by the following:

4. Other Insurance

    a. Primary Insurance
This insurance is primary except when b. below applies.

    b. Excess Insurance
This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis:

        (4) That is valid and collectible insurance available to you under any other policy.

If a loss occurs involving two or more policies, each of which state that its insurance will be excess, then our policy will contribute on a pro rata basis.

(Kalik Decl. Ex. A.)

10

A. <u>Zurich's Motion for Summary Judgment</u>

A comparison of the three policies demonstrates that the Zurich Policy is excess to both the Scottsdale and Harleysville Policies. The Zurich Policy states that: "(1) [t]his insurance is excess over . . . (b) [a]ny other primary insurance available to [Sciame] covering liability for damages arising out of the premises or operations, or the products and completed operations, for which [Sciame has] been added as an additional insured by attachment of an endorsement." (DeMarco Decl. Ex. A.). Such language unambiguously provides only excess coverage vis a vis policies in which Sciame was added as an additional insured. See <u>L & B Estates, LLC v. Allstate Ins.</u>, 71 A.D.3d 834, 837 (N.Y. App. Div. 2d Dep't 2010).

Harleysville concedes that its policy provides coverage primary to Zurich's. The Harleysville Policy states that "[a]ny coverage provided by [the Harleysville AI Endorsement] to an additional insured shall be excess . . . unless a written contract specifically requires that this insurance be primary and that the additional insured's primary coverage be non-contributory." (DeMarco Decl. Ex. B.) It is uncontested that Peepels and Sciame entered into such a written contract. (<u>See</u> DeMarco Decl. Ex. E at Article 13.4 ("[t]he coverage afforded to the Additional Insureds shall be on a primary and non-contributory basis.").)

Relying primarily on <u>Endurance Am. Specialty Ins. Co. v. Century Sur. Co.</u>, 46 F. Supp. 3d 398 (S.D.N.Y. 2014), Scottsdale argues that because each policy contains clauses purporting to be "excess" to other insurance, the clauses "cancel each other out" and both insurers must share in the defense. In <u>Endurance</u>, as here, the plaintiff issued a commercial general liability policy to a general contractor, and the defendant issued a commercial general liability policy to a subcontractor, naming the general contractor as an additional insured. Both policies contained "other insurance" clauses. The subcontractor's policy stated that it would be

11

"[e]xcess over any other insurance whether the other insurance is stated to be primary, pro rata, contributory, excess . . . ." The Endurance plaintiff's insurance policy was virtually identical to the Zurich Policy. Analyzing these clauses, Magistrate Judge Peck held that "[b]ecause both . . . policies provide concurrent primary coverage with excess other insurance clauses, their excess clauses cancel one another out and the ratable contribution rule applies." Endurance Am. Specialty Ins. Co., 46 F. Supp. 3d at 429–30. Scottsdale advocates for the same result here.

However, the subcontractor's policy in Endurance differed from the Scottsdale Policy. The Endurance subcontractor's policy stated that it was "excess over any other insurance whether the other insurance is stated to be primary, pro rata, contributory, excess, contingent, umbrella, or on any other basis." By contrast, the Scottsdale Policy's "other insurance" clause states that it provides "primary" coverage except that it "is excess over any other . . . valid and collectible insurance available to you under any other policy." Critically, the term "you" refers only to the "named insured," i.e. Spray-On, and not to any additional insureds such as Sciame. (See DeMarco Decl., Ex. C at 10.)[1] Because the Zurich Policy expressly states that it is excess to such a policy, the Scottsdale Policy provides the first layer of primary coverage. This interpretation is consistent with the language of the Spray-On/Sciame subcontract, which required Spray-On to obtain insurance covering Sciame "on a primary and non-contributory basis."

---

[1] See also 15 Couch on Insurance § 40:27 (3d ed. 2011) ("Insurance carriers often employ the terms 'you' and 'your' throughout the language of a policy. These terms are typically defined as referring to the named insured shown in the declarations of the policy and any other person or organization qualifying as a named insured under the policy. Accordingly, 'you' and 'your' do not encompass individuals or entities added as an additional insured to the policy. . . . If 'you' or 'your' were interpreted as including additional insureds, the scope of coverage provided to an additional insured would be expanded significantly. This is especially true in the construction defect litigation context.") (emphasis added) (internal citations omitted).

B. <u>Harleysville's Motion for Summary Judgment</u>

While Harleysville does not dispute that its policy provides a higher tier of coverage than the Zurich Policy, Harleysville argues that the Scottsdale Policy is primary with respect to the Harleysville Policy. This argument also seizes on the language from the Scottsdale Policy stating that it provides "primary" coverage and is only "excess over any other . . . valid and collectible insurance available to you", <u>i.e.</u>, available to Spray-On. Of course, the insurance provided by the Harleysville Policy is not "valid and collectible insurance available to [Spray-On]"; it is only valid and collectible insurance available to Sciame. By contrast, the Harleysville Policy states that it "shall be excess over any other valid and collectible insurance <u>available to the additional insured</u>," <u>i.e.</u>, Sciame. There is no question that the Scottsdale Policy is valid and collectible insurance available to Sciame.

"Where the terms of an insurance policy are clear and unambiguous, they should be given their plain and ordinary meaning, and courts should refrain from rewriting the agreement." <u>Tufo's Wholesale Dairy, Inc. v. CNA Fin. Corp.</u>, No. 03-cv-10175 (JFK), 2005 WL 756884, at *3 (S.D.N.Y. Apr. 4, 2005) (citation and quotation omitted). Here, the Harleysville and Scottsdale policies are unambiguous in their provisions of coverage to the additional insured, Sciame. Because a "comparison of their respective other insurance clauses" demonstrates that the Harleysville Policy provides excess coverage as compared with the Scottsdale Policy, Harleysville's motion for summary judgment is granted. <u>See</u> <u>Sport Rock Int'l.</u>, 65 A.D.3d at 18.

## CONCLUSION

For the foregoing reasons, Zurich's summary judgment motion is granted in part and Harleysville's summary judgment motion is granted. Specifically, this Court finds that (1) both Harleysville and Scottsdale have a duty to defend and indemnify FJ Sciame, and (2) the

Scottsdale Policy provides the primary coverage to FJ Sciame, with the Harleysville and Zurich Policies providing the first and second layers of excess coverage, respectively.

The Clerk of Court is directed to terminate all pending motions and close this case.

Dated: July 7, 2016
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.